CNBR

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

SANDRA PRUITT )
1501 Deer Run Court )
Mitchellville, Maryland 20721 )
)
    Plaintiff, )
)
vs. ) Case No. CAL15-04389
)
WELLS FARGO BANK, N.A. )
Serve: CSC-Lawyers Incorp. Service Co. )
7 Saint Paul Street, Suite 820 )
Baltimore, Maryland 21202 )
)
    Defendant, )
)
HSBC BANK USA, NATIONAL ASSOCIATION )
Serve: The Corporation Trust Incorporated )
351 West Camden Street )
Baltimore, Maryland 21201 )
)
    Defendant. )

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Sandra Pruitt, and for her complaint against the Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank USA, N.A. ("HSBC"), alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for declaratory relief, trespass, tort of intentional interference, breach of contract, usury and unjust enrichment arising from the illegal and wrongful actions of Defendants Wells Fargo and HSBC pertaining to a mortgage loan with the Plaintiff Sandra Pruitt.

### PARTIES

2. The Plaintiff is a natural person and resides in Mitchellville, Maryland.

1

3. Defendant Wells Fargo purports to be the loan servicer of Plaintiff's loan. Wells Fargo does business as America's Servicing Company when servicing mortgage loans for other lenders.

4. Defendant HSBC is a financial institution that providing financial services including acting as a trustee for investors of pools of mortgages.

## FACTS

5. Plaintiff obtained a mortgage loan from Fidelity & Trust Mortgage, Inc. ("Fidelity") on May 12, 2005 to purchase "Property" known as 4210 23rd Place.

6. Fidelity sold its residential mortgage banking company in 2007 and it no longer held an interest in any promissory notes or mortgages after 2007.[1]

7. A Corporate Assignment of Deed of Trust ("Assignment") was recorded in the Land Records of Prince George's County Circuit Court. The Assignment was executed on May 7, 2012 by Jessica Bernardina. The assignor of the Assignment was MERS, as nominee for Fidelity & Trust Mortgage, Inc.

8. MERS does not hold an interest in the promissory note ("Note") and only held legal title to the Deed of Trust ("DOT"). MERS is not a true beneficiary of DOT for it has no right to the Property secured by the DOT nor does it have any right to enforce the debt obligation. MERS cannot act on its own but must act at the direction of the "holder" of the Note or the beneficiary of the DOT.

9. The Assignment states that MERS was acting for Fidelity but in May 2012, at the time of the Assignment, Fidelity did not have any interest in the Note or DOT.

---

[1] http://www.bizjournals.com/washington/stories/2007/05/28/daily34.html

10. The Assignment did not transfer any interest in the DOT to HSBC because Fidelity did not have any interest to transfer.

11. The identity of the true holder of the promissory note in May 2012 is unknown. There is no evidence that the holder in May 2012 was a member of MERS. Even if the holder was a member of MERS, the original deed of trust is not sufficient, under Maryland law, to constitute a principal-agency agreement for the unknown, unnamed principal and MERS.

12. Upon information and belief the Assignment was prepared, signed and recorded by Wells Fargo employees and/or representative. At the time Wells Fargo executed the Assignment, Wells Fargo had not been assigned or transferred any interest in the Note or DOT, and did not have any interest in the Note or DOT to assign to HSBC.

13. Upon information and belief Wells Fargo is still not in possession of the Note. Plaintiff has requested Wells Fargo produce a copy of the Note that is certified as being directly copied from the original Note.

14. Plaintiff has conditioned making her payment on proof that Wells Fargo is the present "holder" of the Note but Wells Fargo has failed to produce such proof.

15. Wells Fargo's failure to produce a certified copy of the Note indicates that it is unable to produce a certified copy of the Note. If Wells Fargo were in possession of the Note, then it would be able to make a direct copy of the Note. Since, Wells Fargo is not in possession of the Note, it has failed to produce a certified copy of the Note.

16. Despite Wells Fargo's lack of legal right to enforce the Note and DOT, Wells Fargo has entered the Property and blocked Plaintiff's access to the Property.

17. For a significant period of time Plaintiff was denied access to the Property and was prevented from obtaining rental income on the Property.

18. Plaintiff contacted Wells Fargo to inquire as to the reason Wells Fargo changed the locks on the Property and Wells Fargo agreed to overnight the key. The key arrived a week later and it was the incorrect key.

19. Eventually, Plaintiff paid a locksmith to change the locks and resumed receiving rental income on the Property.

20. As if blocking Plaintiff's access to her Property was not enough, Wells Fargo has contacted Plaintiff's insurance carrier, Travelers Insurance, and falsely advised Travelers that the Property was vacant.

21. Thereafter, Travelers contacted Plaintiff to advise her the insurance would be canceled.

**COUNT ONE: USURY**

22. Plaintiff reincorporates all the allegations above by reference.

23. The general rate of interest that can be charged in Maryland is 6 percent.

24. In order for Wells Fargo to charge more than 6 percent, it must be able to enforce the written agreement -- Note -- signed by Plaintiff.

25. Wells Fargo and its principal, HSBC, are not "holder(s)" of the Note and cannot enforce it.

26. Being that Wells Fargo is not a "holder", it cannot enforce the promissory note and thus it cannot charge interest in excess of 6 percent.

27. Wells Fargo has collected interest in excess of 6 percent from Plaintiff.

4

28. Wells Fargo violated Md. Code Ann., Com. Law §12-102 by charging Plaintiff interest in excess of 6 percent.

29. Wells Fargo is liable to Plaintiff for three times the amount of interest and charges collected in excess of 6 percent pursuant to §12-114.

## COUNT TWO: UNJUST ENRICHMENT

30. Plaintiff reincorporates all the allegations above by reference.

31. Because Wells Fargo is not in possession of the Note, it does not qualify as a "holder" of the Note and cannot enforce the Note.

32. Wells Fargo demanded and received payments from Plaintiff within three years of the filing of this complaint.

33. Because Wells Fargo was not a "holder" nor an agent to the "holder", Wells Fargo was not legally entitled to collect Plaintiff's mortgage payments.

34. Wells Fargo's retention and refusal to return Plaintiff's payments has deprived Plaintiff of her money.

## COUNT THREE: DECLARATORY JUDGMENT

35. Plaintiff reincorporates all the allegations above by reference.

36. Defendants are not in possession of the Note.

37. Defendants have no interest in the Note or DOT.

38. Plaintiff had no obligation to pay Wells Fargo when Wells Fargo failed or refused to document its legal right to enforce the Note.

39. Plaintiff tender payment to Wells Fargo when Plaintiff condition her payment on Wells Fargo showing it was entitled to receive that payment.

40. No interest, fees and charges could be assessed on the Note following Plaintiff's tender of payment to Wells Fargo.

41. Defendants are actively seeking to enforce the Note and collect payments, including interest assessed on the Note following Plaintiff's tender of payment.

42. Plaintiff requests this Court find that Wells Fargo is not a "holder" of the Note and without right to enforce the Note.

43. Plaintiff requests this Court find that no interest be assessed on the Note subsequent to Plaintiff's tender of payment.

## COUNT FOUR: TRESPASS

44. Plaintiff reincorporates all the allegations above by reference.

45. Plaintiff, as the owner of the property, has a possessory interest and is exercising her interest in the Property be leasing it to tenants for rental income.

46. Defendants, either directly or indirectly, caused certain persons to physically enter into the Property and make unauthorized changes to the Property, including changing the locks and so-called "winterizing" the Property.

47. Plaintiff received no notice and had no knowledge that Defendants planned on entering the Property.

48. Plaintiff did not authorize the Defendants to enter the Property.

49. Neither Defendant has any interest in the Deed of Trust and obtained no authorization from the DOT to enter the Property.

50. Plaintiff incurred pecuniary expenses associated with changing the locks and "unwinterizing" the Property.

51. Defendants' trespassed blocked Plaintiff from accessing her Property and resulted in rental income loss due to the delay caused by Defendants' actions.

52. Plaintiff has suffered emotional distress as a result of Defendants' trespass on her Property.

### COUNT FIVE: TORT OF INTENTIONAL INTERFERENCE

53. Plaintiff reincorporates all the allegations above by reference.

54. Defendants contacted Plaintiff's home insurer, Travelers Insurance, to communicate false information that would result in Travelers cancelling Plaintiff's insurance.

55. Defendants knew that the Plaintiff was leasing the Property to a tenant but maliciously advised Travelers Insurance that the Property was vacant.

56. Defendants knew Plaintiff had an insurance contract with Travelers Insurance.

57. Defendants knew that Travelers Insurance would cancel its insurance with Plaintiff if Defendants could convince Travelers Insurance that the Property was vacant.

58. As a result of Defendants foregoing malicious communication Travelers Insurance cancelled Plaintiff's insurance policy.

59. Travelers Insurance policy cancellation based on a false premise constituted a breach of Plaintiff's contract with Travelers Insurance.

60. As a result of the foregoing the Plaintiff incurred damages associated with obtaining replacement insurance.

### COUNT SIX: BREACH OF CONTRACT
*(In The Alternative)*

61. Plaintiff reincorporates all the allegations above by reference.

62. The DOT governs certain aspects of the agreement with the Plaintiff and Lender.

63. The DOT stipulates the circumstances in which the Lender or Noteholder can enter the Plaintiff's property.

64. The DOT states that the Lender or Noteholder must provide notice to the Plaintiff that the Lender or Noteholder intends to inspect the Property.

65. The DOT further states that the Lender or Noteholder must have a reasonable cause to inspect the Property.

66. The provisions in the DOT that permit a Lender or Noteholder to enter the Property indicate that Plaintiff's abandonment of the Property constitutes reasonable cause to enter the Property.

67. The Plaintiff did not abandon the Property as evidence by her maintenance of insurance, payment of property taxes and her leasing of the Property.

68. To the extent the Defendants have standing to enforce the DOT, they breached their contractual obligation to the Plaintiff by entering Plaintiff's Property without providing the Plaintiff with prior notice and entering the Property for an unreasonable cause.

69. The Defendants' breach caused the Plaintiff to expend money and otherwise suffer pecuniary losses.

70. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for compensatory damages. In the alternative, the Defendants are liable for nominal damages.

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a) Statutory damages in the amount of three times the excess interest collected;
(b) Actual damages in the amount of all mortgage payments received within three years;
(c) Declaring that the Defendants have no interest in the Note;
(d) Actual damages for Counts Three thru Six;

(e) Award costs and reasonable attorney's fees and costs; and
(f) Any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

By *[signature: Sandra Pruitt]*

Sandra Pruitt (Pro Se Plaintiff)
1501 Deer Run Court
Mitchellville, MD 20721
Telephone: (301) 509-9643