IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDRA PRUITT

      v.

WELLS FARGO BANK, N.A., et al.

:
:
:   Civil Action No. DKC 15-1308
:
:
:

## MEMORANDUM OPINION

Presently pending and ready for resolution in this mortgage lending case is an unopposed motion to dismiss filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank USA, National Association ("HSBC") (collectively, the "Defendants"). (ECF No. 21). The court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I.   Background

### A.   Factual Background[1]

On March 12, 2005, Fidelity & Trust Mortgage, Inc. ("Fidelity") provided a mortgage loan to Plaintiff Sandra Pruitt ("Plaintiff") that was evidenced by a promissory note (the "Note") and secured by a deed of trust (the "Deed of Trust") on

---

[1] When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). Unless otherwise noted, the facts outlined here are alleged in the complaint and construed in the light most favorable to Plaintiff, the nonmoving party.

certain real property located at 4210 23rd Place, Temple Hills, Maryland 20748 (the "Property").  (ECF No. 2 ¶¶ 5-8).  Mortgage Electronic Registration Systems, Inc. ("MERS") acted as a nominee for Fidelity and Fidelity's successors and assigns. (*Id.* ¶ 7; ECF No. 21-3, at 2).  MERS assigned the Deed of Trust to HSBC on May 7, 2012 (the "Assignment").  (ECF Nos. 2 ¶ 7; 21-4, at 2).  HSBC owns the Deed of Trust and Wells Fargo services the mortgage on behalf of HSBC.  (ECF Nos. 2 ¶¶ 3-4, 7; 21-4).

According to Plaintiff, "[t]he identity of the true holder of the promissory note in May 2012 is unknown" and, "[a]t the time Wells Fargo executed the Assignment, Wells Fargo had not been assigned or transferred any interest in the Note or [Deed of Trust], and did not have any interest in the Note or [Deed of Trust] to assign to HSBC."  (ECF No. 2 ¶¶ 11-12).  Believing that Wells Fargo does not possess the Note, Plaintiff alleges that she "has conditioned making her payment on proof that Wells Fargo is the present 'holder' of the Note but Wells Fargo has failed to produce such proof."  (*Id.* ¶¶ 13-14).

Plaintiff asserts that Wells Fargo entered the Property and denied Plaintiff's access, thereby preventing her from obtaining rental income.  Plaintiff alleges that Wells Fargo changed the locks on the Property and subsequently sent Plaintiff the incorrect key.  Plaintiff hired a locksmith to change the locks and resumed receiving rental income from the Property.

Plaintiff also avers that Wells Fargo contacted Plaintiff's insurance carrier, Travelers Insurance ("Travelers"), and falsely communicated that the Property was vacant. Thereafter, Travelers allegedly informed Plaintiff that her insurance would be cancelled.

In the unopposed motion to dismiss, Defendants assert that Plaintiff filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of Maryland on April 26, 2012. (ECF Nos. 21-1, at 2; 21-5, at 18); *see In re Pruitt*, No. 12-17889-WIL (D.Md. 2012). In bankruptcy court, Plaintiff entered into a consent order with Defendants modifying an automatic stay and under which Plaintiff agreed to make monthly payments to Wells Fargo. (ECF Nos. 21-1, at 2; 21-8). According to Defendants, Plaintiff ultimately defaulted on her obligations, which resulted in the dismissal of the bankruptcy proceeding on June 17, 2014. (ECF No. 21-1, at 2; *see* ECF No. 21-5, at 3).

**B. Procedural Background**

Plaintiff, proceeding *pro se*, filed this action against Defendants in the Circuit Court for Prince George's County on March 9, 2015. Defendants timely removed the action to this court. (ECF No. 1). The complaint asserts the following claims against Defendants: usury (Count I); unjust enrichment (Count II); trespass (Count IV); tort of intentional interference

(Count V); and breach of contract (Count VI).  Plaintiff also seeks declaratory relief (Count III).  (ECF No. 2).

Defendants filed a motion to dismiss the complaint on May 14, 2015.  (ECF No. 21).  The next day, Plaintiff was provided with a *Roseboro* notice via letter, which advised her of the pendency of the motion to dismiss and her entitlement to respond within seventeen days.  (ECF No. 22); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment).  The letter also warned Plaintiff that failure to respond in opposition could result in the dismissal of her case without further notice.  To date, Plaintiff has not filed any opposition to the motion to dismiss, and the time for her to do so has long expired.  Local Rule 105.2(a).  Accordingly, Defendants' motion is unopposed.

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In reviewing the motion to dismiss, the court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, the Note, the Deed of Trust, and the Assignment are referenced in the complaint and are integral, as they provide the basis for the parties' rights to the Property. Accordingly, these documents may be considered without converting the motion into one for summary judgment. In addition, facts and documents subject to judicial notice may be considered by a court, without converting the motion under Rule 12(d). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011). Here, the court may take judicial notice of the bankruptcy proceeding and consider related documentation. *Anderson v. FDIC*, 918 F.2d 1139, 1141 (4th Cir. 1990) ("[T]he Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records.").

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, "even a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief." *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 679; *O'Neil v. Ponzi*, 394 F.App'x. 795, 796 (2$^d$ Cir. 2010)).

## III. Analysis

Although Defendants' motion to dismiss is unopposed, the court must review the motion papers to determine whether dismissal is proper. *Wheatley v. Cohn*, No. GLR-13-3850, 2014 WL 2452606, at *2 (D.Md. May 30, 2014) (citing *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014)). "When a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted' in the motion." *White v. Wal Mart Stores, Inc.*, No. ELH-13-00031, 2014 WL 1369609, *2 (D.Md. Apr. 4, 2014) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)). Moreover, a district court has the inherent authority to dismiss a lawsuit *sua sponte* for failure to prosecute. *See Link v.*

*Wabash R.R. Co.*, 370 U.S. 626, 629 (1962)); *White*, 2014 WL 1369609, at *2 ("In light of [the] plaintiff's failure to oppose the [m]otion, I can only assume that [the] plaintiff concedes that her [c]omplaint is deficient for the reasons stated by [the] defendant."). "[T]he district court also has discretion to decline to 'grant a motion to dismiss based on the failure to file a timely opposition when the motion is plainly lacking in merit.'" *White*, 2014 WL 1369609, at *2 (quoting *United States v. Sasscer*, Civ. No. Y-97-3026, 2000 WL 1479154, at *2 n.6 (D.Md. Aug. 25, 2000)).

Based on the following analysis, there is no obvious lack of merit in Defendants' motion to dismiss. The allegations contained in Plaintiff's complaint do not give rise to claims for usury, unjust enrichment, trespass, intentional interference, breach of contract, any other cognizable cause of action, or declaratory relief.[2] *See Brown-Henderson v. Capital One, N.A.*, No. DKC-13-3324, 2014 WL 3778689, at *1 (D.Md. July

_____

[2] Defendants assert that Plaintiff is bound by her judicial admissions in her bankruptcy action in which she, according to Defendants, expressly acknowledged Defendants' authority to enforce the Note. (ECF No. 21-1, at 6 ("Plaintiff has not only made binding judicial admissions acknowledging [Defendants'] authority to enforce [the] Note, she also is judicially and equitably estopped from asserting or challenging the authority of [Defendants] to enforce the Note in light of [the] Consent Order entered in the Bankruptcy Action.")). Defendants do not, however, apply the doctrines of res judicata or collateral estoppel to the facts here. Accordingly, the court will not find Plaintiff's claims to be barred by res judicata or collateral estoppel.

29, 2014) (determining that "[t]here is no obvious lack of merit in [the defendant's] motion given the allegations contained in [the plaintiff's] complaint, none of which give rise to a claim to quiet title or any other cognizable cause of action"); *Castillo v. Nationstar Mortgage, LLC*, No. DKC-14-2162, 2014 WL 5089088, at *1 (D.Md. Oct. 8, 2014) (same).

## A.   Count I: Usury Claim

In Count I of the complaint, Plaintiff asserts that Wells Fargo violated Maryland usury statutes and is liable to Plaintiff for three times the amount of interest and charges collected in excess of six percent.  (ECF No. 2 ¶¶ 27-29); Md. Code Ann., Com. Law §§ 12-102, 12-114.[3]  Defendants counter by arguing that Count I is preempted by the National Bank Act, 12 U.S.C. §§ 85-86.  In so arguing, Defendants assert that Wells Fargo and HSBC are national banks and fall within the scope of the National Bank Act.  (ECF No. 21-1, at 8); *see* 12 U.S.C. § 25b.[4]  According to Defendants, the National Bank Act completely

---

[3] Plaintiff asserts in Count I that Defendants "are not 'holders' of the Note and cannot enforce it.  Being that Wells Fargo is not a 'holder,' it cannot enforce the [Note] and thus it cannot charge interest in excess of 6 percent." (ECF No. 2 ¶¶ 25-26).  Plaintiff provides no law in support of her assertion, and Plaintiff's underlying argument is analyzed and rejected below. *See infra* Part III.C.

[4] Defendants supply documentation from the United States Federal Reserve System's National Information Center listing Defendants Wells Fargo and HSBC as national banks. (ECF Nos.

preempts state law usury claims.  "[I]t is unquestionable that complete preemption exists in actions where it is alleged that national banks have violated state usury law."  *Johnson v. Wachovia Bank, N.A.*, No. JFM-05-2654, 2006 WL 278549, at *1 (D.Md. Feb. 2, 2006) (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7, 10 (2003) (characterizing "complete preemption" doctrine as a narrow exception to the well-pleaded complaint rule and finding that the National Bank Act provides the exclusive remedy for usury claims against federal banks); *Austin v. Provident Bank*, 2005 WL 1785285 (N.D.Miss. July 26, 2005)).

---

21-9; 21-10).  Defendants request that the court take judicial notice of such information.  (ECF No. 21-1, at 5).

Although generally limited to the complaint or documents integral to the complaint, the court "may properly take judicial notice of matters of public record" when reviewing a Rule 12(b)(6) motion.  *Philips*, 572 F.3d at 180 (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (noting that it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services.")); *see Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 777 F.Supp.2d 424, 432 n.6 (E.D.N.Y. 2011) ("[T]he Court may take judicial notice of the [Brooklyn Bridge Park] website, which is a government publication."); *Zappier v. Sun Life Assur. Co. of Canada*, No. 05-CV-5300, 2006 WL 2621110, at *8 n.12 (S.D.N.Y. Aug. 10, 2006) ("[T]he Court clearly can take judicial notice of the [United States Department of Labor's Dictionary of Occupational Titles], which is a United States government publication.").

The court may not take judicial notice of matters that are in dispute.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); Fed.R.Evid. 201(b)(2) (permitting judicial notice of facts "not subject to reasonable dispute").  Given that Defendants' motion to dismiss is unopposed, Plaintiff does not challenge Defendants' documentation or "national bank" designations.  The court will take judicial notice of Defendants' status as national banks.

Complete preemption, however, does not end the inquiry and warrant dismissal of Plaintiff's usury claim.

In *Beneficial*, the court determined that §§ 85 and 86 of the National Bank Act "created the sole law and remedy as to claims of unlawful interest rates against national banks." *McKenzie v. Ocwen Fed. Bank FSB*, 306 F.Supp.2d 543, 545 (D.Md. 2004) (citing *Beneficial*, 539 U.S. at 11). When Congress "completely preempts" state law, the preempting federal statute causes the preempted state claim to be converted into a federal claim; that is, a party asserting a state claim "simply has brought a mislabeled federal claim, which may be asserted under [the] federal statute." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003).

> Federal preemption only converts a state-law claim into a federal one when a federal claim replaces the preempted state cause of action. [*Id.*] at 425 (describing the existence of a federal claim a "vital feature" of complete preemption). Where no federal claim replaces the state-law cause of action, preemption functions only as a federal defense. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *King*, 337 F.3d at 424.

*Bennett v. Bank of Am., N.A.*, No. 3:11-CV-003, 2011 WL 1814963, at *4 (E.D.Va. May 11, 2011). In *Beneficial*, the Supreme Court held that the National Bank Act provides the exclusive claim for usury claims against national banks. 539 U.S. at 11 ("Because §§ 85 and 86 provide the exclusive cause of action for such

claims, there is, in short, no such thing as a state-law claim of usury against a national bank."); *Evans v. Nat'l Bank of Savannah*, 251 U.S. 108, 114 (1919) (determining that federal law "completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate"). Accordingly, although Plaintiff alleges in Count I a violation of Maryland law, the real nature of the claim is federal and governed by the National Bank Act.

Section 85 establishes limits on the interest rate that a national bank, such as Wells Fargo, may charge on a loan. 12 U.S.C. § 85. This rate of interest is generally tied to the rate allowed in the state where the bank is located. 12 U.S.C. § 85; *see Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 310 (1978) (citation omitted) (noting that a national bank is "'located' for purposes of the section in the State named in its organization certificate). Section 86 "sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim." *Beneficial*, 539 U.S. at 9. Here, Plaintiff has not alleged where Wells Fargo is located or whether the rate of interest charged to Plaintiff exceeded the rate allowable under

that state's laws.[5]  Plaintiff's allegations are insufficient to support a plausible claim for usury under the National Bank Act, and Count I will be dismissed.

Even if a state law cause of action for usury were available to Plaintiff, she has nonetheless failed to state a claim.[6]  Under the Maryland statute, and "[e]xcept as otherwise provided by law, a person may not charge interest in excess of an effective rate of simple interest of 6 percent per annum on the unpaid principal balance of a loan."  Md. Code Ann., Com. Law § 12-102.  However, a lender may charge interest at any effective rate if, *inter alia*: "[t]here is a written agreement signed by the borrower which sets forth the stated rate of

---

[5] Moreover, Wells Fargo appears to be located in South Dakota, and South Dakota does not set a maximum interest rate so long as that rate is set by written agreement, as it is here. (*See* ECF No. 21-9); S.D. Codified Laws §§ 54-3-1.1, 54-3-13. Accordingly, the interest rate charged to Plaintiff on the loan was not in excess of that permitted by South Dakota.  *See Miller v. Wells Fargo Home Mortgage*, No. CIVS-10-0284GEBDADPS, 2010 WL 3431802, at *3 (E.D.Cal. Aug. 31, 2010); *Taft v. Wells Fargo Bank, N.A.*, 828 F.Supp.2d 1031, 1035 (D.Minn. 2011) (citation omitted) ("South Dakota does not limit the rate of interest a bank such as Wells Fargo may charge.").

[6] Plaintiff brings Count I against Wells Fargo, the servicer of the mortgage loan.  Defendants argue that state usury claims against national banks are preempted, seemingly regardless of whether the defendant bank made the loan in question. Defendants rely on *Beneficial*, in which the defendant national bank was undisputedly the lender.  539 U.S. at 1.  But the Supreme Court in *Beneficial* did not consider whether §§ 85 and 86 of the National Bank Act would preempt state usury claims made against a national bank that is not the actual lender on a loan.

interest charged by the lender" and "[t]he loan is secured by a first mortgage or first deed of trust on any interest in residential real property." *Id.* § 12-103(b)(1).   Here, Defendant asserts that this exception applies, thereby allowing Defendants to charge any rate of interest set forth and agreed to by the borrower in connection with the purchase of residential real property. (ECF No. 21-1, at 8 n.5). Plaintiff entered into the mortgage agreement with Fidelity; in the Deed of Trust, Plaintiff agreed to an initial fixed interest rate of 6.125% and, thereafter, an adjustable rate between 2.25% and 11.125%. (ECF No. 21-3, at 13).   Accordingly, the exception to the six percent maximum applies. *See* Md. Code Ann., Com. Law §§ 12-102, 12-103(b)(1).   By simply reciting the general maximum interest rate under § 12-102 and alleging only that "Wells Fargo has collected interest in excess of 6 percent from Plaintiff" (ECF No. 2 ¶ 27), Plaintiff does not plausibly state a claim that Wells Fargo violated Maryland's usury statutes.

### B.   Count II: Unjust Enrichment Claim

Plaintiff asserts a claim of unjust enrichment in Count II, alleging that "[b]ecause Wells Fargo was [neither] a 'holder' [of the Note] nor an agent to the 'holder', Wells Fargo was not legally entitled to collect Plaintiff's mortgage payments." (ECF No. 2 ¶ 33).   Defendants contend that Plaintiff is judicially and equitably estopped from denying that Defendants

were entitled to receive regular mortgage payments, that Plaintiff never alleges that she has made any mortgage payments to Defendants within the last three years, and that this quasi-contract remedy is unavailable when a written agreement governs the relationship.

Unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) a defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). Plaintiff does allege that "Wells Fargo demanded and received payments from Plaintiff within three years of filing [the] complaint." (ECF No. 2 ¶ 32).[7] Critically, however:

> The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests. . . . The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of

---

[7] Plaintiff also suggests that she has not made mortgage payments to Wells Fargo: "Plaintiff has conditioned making her payment on proof that Wells Fargo is the present 'holder' of the Note but Wells Fargo has failed to produce such proof." (ECF No. 2 ¶ 14; *see also id.* ¶¶ 39, 43).

> having those expectations defeated.  As a
> result, they have no remedy under the
> contract for restoring their expectations.
> In desperation, they turn to quasi-contract
> for recovery.  This the law will not allow.

*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000) (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 776 (1984)); *see also Francis O. Day Co. v. Montgomery Cty.*, 102 Md.App. 514, 521 (1994) ("[I]f appellant's claim against appellee is based on a written contract, then there can be no unjust enrichment."), *overruled on other grounds by Harford County v. Town of Bel Air*, 348 Md. 363 (1998).  Maryland case law has been interpreted thusly by the United States District Court for the District of Maryland: "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."  *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (1998) (citations omitted); *see also Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (1998) ("Unjust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.").  Here, given the express mortgage agreement – that is, the Deed

of Trust and the Note – Plaintiff's claim for unjust enrichment will not lie.

Were Plaintiff able to state a claim for unjust enrichment irrespective of the written mortgage agreement, the allegations in the complaint do not satisfy the third element of such a claim.  To state a claim for unjust enrichment, Plaintiff must plausibly allege Defendants' "acceptance or retention of the benefit under circumstances that would make it inequitable for [Defendants] to retain the benefit without the payment of its value." *Hill*, 402 Md. at 295.  Although Plaintiff asserts that Wells Fargo is not entitled to collect her mortgage payments, a consent order in the United States Bankruptcy Court for the District of Maryland ordered Plaintiff to tender the requisite debt service payments to Wells Fargo.  (ECF No. 21-8, at 3).[8] The consent order stayed the commencement or continuation of a foreclosure proceeding on the Property provided that Plaintiff make regular monthly payments to Wells Fargo "pursuant to the terms of [the Note] secured by the Deed of Trust on the [Property]." (*Id.*).  Defendants argue, and Plaintiff does not

---

[8] Represented by counsel, Plaintiff entered into the consent order on August 13, 2012, under which she agreed to make monthly payments to Wells Fargo as servicing agent for HSBC. (ECF No. 21-8, at 2-3).  Defendants assert that Plaintiff did not challenge Defendants' right to enforce the Note during the bankruptcy proceeding.  (ECF No. 21-1, at 2).  In addition, according to Defendants, Plaintiff ultimately defaulted on her obligations, resulting in the dismissal of the bankruptcy proceeding on June 17, 2014.  (*Id.*).

challenge, that "to the extent Plaintiff made payments to Wells Fargo, she has received the benefit of those payments being applied to her debt. There is nothing unjust about Wells Fargo receiving payments which [] Plaintiff is legally and contractually required to make." (ECF No. 21-1, at 9). Taking judicial notice of the consent order, the allegations in Plaintiff's complaint do not plausibly state a claim for unjust enrichment because it is not inequitable for Wells Fargo to retain the benefit of Plaintiff's purported mortgage payments without the payment of its value. Accordingly, Count II will be dismissed.

### C.   Count III: Declaratory Judgment

In Count III, Plaintiff asserts that Defendants are not in possession of the Note and have no interest in the Note or Deed of Trust. (ECF No. 2 ¶¶ 36-37). Defendants argue that the complaint does not state a claim for declaratory relief. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." The purpose of issuing such a judgment is to clarify and settle the legal relations between the parties, and a declaratory judgment should be issued when "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255,

256 (4th Cir. 1996).   Federal courts issue declaratory judgments only in cases that (i) meet the constitutional "case or controversy" requirement and also (ii) present a valid basis for subject matter jurisdiction. *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F.Supp. 998, 1001 (D.Md. 1985). Generally, the presence of a case or controversy depends on "whether the facts alleged . . . show . . . a controversy . . . of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).   And even where a request for a declaratory judgment meets both of these requirements, the district court, in its discretion, must be satisfied that declaratory relief is appropriate.   *See White v. National Union Fire Ins. Co.*, 913 F.2d 165, 168 (4th Cir. 1990) (citing *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331 (1961); *Glenmont Hill Associates v. Montgomery Cty., MD*, 291 F.Supp.2d 394, 397 (D.Md. 2003) ("[W]hile a federal court is authorized to issue a declaratory judgment, it is not obligated to do so.").

Plaintiff, without citation to legal authority, requests entry of a declaration "that Wells Fargo is not a 'holder' of the Note and without right to enforce the Note" and "that no interest be assessed on the Note subsequent to Plaintiff's tender of payment."   (*Id.* ¶¶ 41-43).   In support, Plaintiff

alleges, "Upon information and belief Wells Fargo is still not in possession of the Note.  Plaintiff has requested Wells Fargo produce a copy of the Note that is certified as being directly copied from the original Note."   (ECF No. 2 ¶ 12-13). Defendants counter that the ownership and agency relationship between the parties have been conclusively established.  (ECF No. 21-1, at 10).  Defendants further assert that the Deed of Trust expressly "empowers MERS to assign a note or deed of trust on behalf of a lender *and its successors and assigns*."  (*Id.* at 11 (emphasis in original) (citations omitted)).

Plaintiff fails to set forth plausible facts showing her entitlement to declaratory relief.   A federal declaratory judgment action requires an actual case or controversy, not a mere hypothetical issue.   Here, Defendants attach the Deed of Trust, the Note, and the Assignment to their unopposed motion to dismiss, and Plaintiff alleges no facts whatsoever casting doubt on Defendants' status as assignee of the relevant documentation.[9]

---

[9] Under the Deed of Trust, MERS acted "as a nominee for [Fidelity] and [Fidelity's] successors and assigns.  MERS is the beneficiary under this Security Instrument."  (ECF No. 21-3, at 2).  Plaintiff thus agreed to permit MERS, as nominee, to act on behalf of Fidelity.  *See Mabry v. MERS*, No. WMN-13-1700, 2013 WL 5487858, at *3 (D.Md. Oct. 1, 2013) ("[B]y signing the Deed of Trust, Plaintiff consented to MERS's authority to act on behalf of the Lender.  Plaintiff presents no plausible claim that MERS was not vested with the authority to do so.").  MERS assigned the Deed of Trust to HSBC (ECF No. 21-4, at 2), which presently owns the mortgage, and Wells Fargo is the servicing agent.

Accordingly, there is no current case or controversy before the court.  Furthermore, even crediting Plaintiff's allegation that Defendants are not in actual possession of the original Note, entry of Plaintiff's requested declaratory relief is not warranted because it contravenes Maryland law.  In Maryland, whether or not a party holds the Note is not dispositive of its right to enforce the Note; this court has determined that, under Maryland law, a defendant "need not be a 'holder' of the original promissory note in order to enforce . . . the Deed of Trust." *Pruitt v. Alba Law Grp., P.A.*, No. DKC-15-0458, 2015 WL 5032014, at *9 (D.Md. Aug. 24, 2015) (declining to issue declaratory relief requested by the plaintiff that contravened Maryland law).[10]  The court will decline to enter declaratory relief stating that Wells Fargo is not a "holder" of the Note

---

[10]  In Maryland, "[t]he title to any promissory note . . . conclusively is presumed to be vested in the person holding the record title to the mortgage."  Md. Code Ann., Real Prop. § 7-103(a).  "Courts in this district have thus repeatedly rejected this 'show me the note' argument." *Quattlebaum v. Bank of Am., N.A.*, No. TDC-14-2688, 2015 WL 7185438, at *5 (D.Md. Nov. 12, 2015) (citing *Jones v. Bank of N.Y. Mellon*, No. DKC-13-3005, 2014 WL 3778685, at *4 (D.Md. July 29, 2014); *Harris v. Household Finance Corp.*, RWT-14-606, 2014 WL 3571981, at *2 (D.Md. July 18, 2014) (finding that there is no recognizable claim that a mortgagor must produce "'wet ink' signature documents" in order for a mortgage to be valid)).

Furthermore, Plaintiff has not challenged Defendants' asserted right to enforce the Note and collect payment. Nowhere in her complaint does Plaintiff dispute that she owed the underlying debt and defaulted on her mortgage payments.

and without right to enforce it, and Count III will be dismissed.

### D.   Count IV: Trespass

In Count IV, Plaintiff asserts a claim for trespass. Plaintiff alleges that she, as owner of the Property, has a possessory interest and exercises that interest by leasing the Property to tenants for rental income. (ECF No. 2 ¶ 45). According to Plaintiff, Defendants "caused certain persons to physically enter into the Property and make unauthorized changes to the Property, including changing the locks and so-called 'winterizing' the Property" without providing notice or receiving permission. (*Id.* ¶¶ 46-48). Defendants contend that Plaintiff fails to state a claim for trespass because she admits that she stopped making mortgage payments and, upon default, Wells Fargo exercised its rights under the Deed of Trust. (ECF No. 21-1, at 11).

A trespass is an intentional or negligent intrusion upon or to the possessory interest in property of another. *Ford v. Baltimore City Sheriff's Office*, 149 Md.App. 107, 129 (2002). "To state a prima facie case of trespass, a plaintiff must allege '(1) an interference with a possessory interest in [her] property; (2) through the defendant's physical act or force against that property; (3) which was executed without [her] consent.'" *McCray v. Specialized Loan Servicing*, No. RDB-12-

02200, 2013 WL 1316341, at *5 (D.Md. Mar. 28, 2013) (quoting *Royal Inv. Grp., LLC v. Wang*, 183 Md.App. 406, 445 (2008)). Consent is a "complete defense" against a claim for trespass, and consent may be express of implied. *Royal Inv. Grp.*, 183 Md.App. at 445 (citations omitted). Furthermore, "[c]onsent can be provided by a deed of trust." *Thompson v. JP Morgan Chase Bank, N.A.*, No. WDQ-13-1982, 2014 WL 4269060, at *7 (D.Md. Aug. 27, 2014) (citing *McCray*, 2013 WL 1316341, at *5).

Considering deeds of trust and factual circumstances similar to those at issue here, the *McCray* and *Thompson* courts dismissed trespass claims because the plaintiffs were in default, thus authorizing the defendants to enter onto and secure the properties. *McCray*, 2013 WL 1316341, at *5; *Thompson*, 2014 WL 4269060, at *7. Here, the Deed of Trust requires that Plaintiff make timely mortgage payments.[11] In the complaint, Plaintiff appears to concede that she failed to make mortgage payments to Wells Fargo: "Plaintiff has conditioned making her payment on proof that Wells Fargo is the present 'holder' of the Note but Wells Fargo has failed to produce such proof." (ECF No. 2 ¶ 14; *see also id.* ¶¶ 39, 43). Plaintiff failed to perform the first covenant of the Deed of Trust

---

[11] The first provision of the Uniform Covenants contained in the Deed of Trust establishes that "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note." (ECF No. 21-3, at 4).

requiring timely payment.   Thus, Plaintiff's delinquency triggered Defendants' right to enter the Property to do "whatever is reasonable or appropriate to protect [its] interest in the Property . . . , including . . . securing and/or repairing the Property."   (ECF No. 21-3, at 6).[12]   Moreover, Defendants were "under no obligation to give notice to Plaintiff concerning [their] use of peaceable self-help to secure [their] property interest."   *McCray*, 2013 WL 1316341, at *5 n.7. Accordingly, Defendants had authority to inspect, secure, and winterize the Property.   Plaintiff's trespass claim in Count IV will be dismissed.

### E.   Count V: Intentional Interference With Contract

In Count V, Plaintiff asserts a claim against Defendants for the tort of intentional interference with contract.   "The tort of intentional interference with contract is well established in Maryland."   *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 296 (1994).   To state a claim, "a plaintiff must allege

---

[12]   The Deed of Trust authorized Defendants to take "reasonable or appropriate" means to protect its interest and secure the Property as a result of Plaintiff's failure to perform the covenants and agreements contained in the Deed of Trust.   (ECF No. 21-3, at 6).   In fact, the Deed of Trust specifically allowed Defendants to enter the Property "to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned off."   (*Id.* at 6-7).   Here, Plaintiff alleges that Defendants "made unauthorized changes to the Property, including changing the locks and so-called 'winterizing' the Property."   (ECF No. 2 ¶ 46).

'(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff.'" *Ayres v. Ocwen Loan Servicing, LLC*, No. WDQ-13-1597, 2015 WL 5286677, at *10 (D.Md. Sept. 8, 2015) (quoting *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991)). According to Plaintiff, "Defendants contacted Plaintiff's home insurer, [Travelers], to communicate false information that would result in Travelers cancelling Plaintiff's insurance." (ECF No. 2 ¶ 54). Plaintiff alleges that Defendants "falsely advised . . . that the Property was vacant. Thereafter, Travelers contacted Plaintiff to advise her the insurance would be canceled." (*Id.* ¶¶ 20-21). According to Plaintiff, the "policy cancellation based on a false premise constituted a breach of Plaintiff's contract with Travelers." (*Id.* ¶ 59). Defendants argue both that Plaintiff fails to state a claim and that she cannot sustain such a claim because HSBC is an express third-party beneficiary under the insurance policy. (ECF No. 21-1, at 13-14).

Defendants argue that Plaintiff's intentional interference claim is futile because HSBC is an express third-party beneficiary under the insurance policy. For the tort to lie, "the defendant tortfeasor cannot be a party to the economic

25

relationship with which the defendant has allegedly interfered." *Kaser v. Fin. Protection Marketing, Inc.*, 376 Md. 621, 639 (2003) (citations omitted). That is, an action for tortious interference has a "three-party requirement." *Id.* at 637. Here, the Deed of Trust required that HSBC be named "as mortgagee and/or as an addition loss payee," making it a primary insured and direct beneficiary under the insurance policy with Travelers. (ECF Nos. 21-1, at 13; 21-3, at 5). Because HSBC has an interest in the insurance policy intended to protect its security interest in the Property, the tort for intentional interference will not lie. *Painter's Mill Grille*, 2012 WL 576640, at *9 ("As such, [the defendants] cannot be liable for the tort of intentional interference with a contract to which they have a relationship.").

Were an action for intentional interference available to Plaintiff, she nonetheless fails to state a claim against Defendants. To establish the tort of intentional interference, the underlying conduct must be wrongful or malicious, "quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 657 (1994). The Maryland Court of Appeals defines wrongful conduct as "common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or

threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (citation and internal quotations omitted). Plaintiff thus must allege that Defendants committed specific wrongful acts to state a claim for intentional interference.[13] Here, however, Plaintiff only offers conclusory allegations in support of her claim; Plaintiff does not allege when Defendants communicated allegedly false information, when Travelers cancelled the insurance policy, or the extent to which Plaintiff was damaged by obtaining replacement insurance. Furthermore, Plaintiff does not identify any specific terms of the underlying contract allegedly breached, thus asserting breach of contract in only a conclusory fashion. As a result, Plaintiff fails to state a claim for intentional interference and Count V will be dismissed.

### F.   Count VI: Breach of Contract

Plaintiff asserts a claim against Defendants for breach of contract in Count VI. According to Plaintiff, the Deed of Trust

---

[13]   Plaintiff's allegations that Defendants communicated false information to Travelers sound in fraud and thus are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783. Rule 9(b) states that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Such circumstances typically "include the 'time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Id.* at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). *See id.* at 783 n.5.

requires that Defendants have reasonable cause to inspect the property and provide notice to Plaintiff before doing so. (ECF No. 2 ¶¶ 64-65). Plaintiff argues that she did not abandon the Property and, as a result, Defendants "breached their contractual obligation to Plaintiff by entering [the Property] without providing . . . prior notice and entering the Property for an unreasonable cause." (*Id.* ¶ 68). In the motion to dismiss, Defendants contend that provisions in the Deed of Trust authorized Defendants to enter onto and secure the Property. In addition, Defendants assert that Plaintiff offers only conclusory allegations that fail to support her breach-of-contract claim. (ECF No. 21-1, at 14).

For the reasons explained above, *see supra* Part III.D, Plaintiff fails to state a claim for trespass because the Deed of Trust authorized Defendants' entry onto the Property. Plaintiff failed to perform the first covenant of the Deed of Trust requiring timely payment, as Plaintiff concedes that she failed to make certain mortgage payments to Wells Fargo. (*See* ECF No. 2 ¶¶ 14, 39, 43). Plaintiff's failure "to perform the covenants and agreements contained in [the Deed of Trust]" triggered Defendants' right to enter the Property to do "whatever is reasonable or appropriate to protect [its] interest in the Property . . . , including . . . securing and/or repairing the Property." (ECF No. 21-3, at 6). Defendants'

right to secure the Property was also triggered by "a legal proceeding that might significantly affect [Defendants'] interest in the Property and/or rights under [the Deed of Trust] (such as a proceeding in bankruptcy . . . )." (*Id.*). Here, Plaintiff filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of Maryland on April 26, 2012. (ECF Nos. 21-1, at 2; 21-5, at 18); *see In re Pruitt*, No. 12-17889-WIL (D.Md. 2012). Accordingly, although Defendants do not challenge Plaintiff's assertion that she had not abandoned the Property, Defendants point to two independent authorizations under the Deed of Trust for entry onto the Property. Plaintiff does not oppose Defendants' motion to dismiss, and her complaint is devoid of specific timeframes or precise contractual provisions that Defendants purportedly breached. Moreover, beyond allegations that Defendants changed the locks and winterized the Property, Plaintiff does not aver that Defendants entered the Property on other occasions without notice or for an unreasonable cause in breach of the terms of the Deed of Trust. Plaintiff's allegations are insufficient to survive Defendants' Rule 12(b)(6) challenge, and Count VI will be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendants' unopposed motion to dismiss will be granted.  A separate order will follow,

                                    /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge